Filed 8/29/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MOUNT PLEASANT ELEMENTARY SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | H050830<br>(Santa Clara County<br>Super. Ct. No. 20CV374714) |

Mount Pleasant Elementary School District contracted with the Santa Clara County Office of Education (SCCOE) for district students to spend four days during the school term in residence at Walden West Outdoor Science School. Although district teachers "help[ed] the program run," SCCOE provided direct overnight supervision of students, with district teachers on call if needed. Jane Doe sued the district, as well as SCCOE and an SCCOE employee, in connection with repeated sexual assaults she alleges the SCCOE employee committed against her when she attended Walden West as a fifth-grade student.

A school district, like other public entities, is vicariously liable for harms proximately caused by the negligence of its employees acting in the scope of employment. (Gov. Code, § 815.2; see also Gov. Code, § 820; *LeRoy v. Yarboi* (2021) 71 Cal.App.5th 737, 742 (*LeRoy*).) As a general rule, this liability for student welfare does not extend beyond the school grounds. (See Ed. Code, § 44808.)[1] But when the

---

[1] Undesignated statutory references are to the Education Code.

district undertakes certain activities off school grounds or specifically assumes responsibility, it may be liable or responsible for student safety if the student "is or should be under the immediate and direct supervision" of a district employee. (*Ibid*.) And among such school-sponsored undertakings, students participating in "field trips or excursions" are also "deemed to have waived all claims against the district . . . for injury, accident, illness, or death occurring during or by reason of the field trip or excursion." (§ 35330, subd. (d).)

Doe's appeal from summary judgment of her negligence claim against the district turns on whether the district has shown these statutes shield the district from liability. We accordingly examine whether the district's evidence establishes as a matter of law either (1) that the outdoor science school was a "field trip or excursion" subject to section 35330's "deemed . . . waive[r]" of liability, or (2) that no district employee should have had immediate and direct supervision of Doe when the SCCOE employee assaulted her.

In our independent judgment, the district failed to carry its burden on either statutory defense. We will reverse.

## I.    BACKGROUND

### A.    *The Pleadings*

In her operative complaint, Doe alleged the following.

SCCOE owns and operates Walden West, a public education science camp providing outdoor experiences to children including an overnight camp. SCCOE employed Edgar Covarrubias-Padilla, an adult male under SCCOE's "complete control and/or active supervision," to serve as a night monitor, mentor, and counselor to minor students.

The district operates elementary schools in Santa Clara County. In that capacity, the district sent Doe and other Ida Jew Academy fifth graders to Walden West.

2

Doe alleges that before she and her classmates went to Walden West, both the district and SCCOE "knew or should have known that [Covarrubias-Padilla] had engaged in unlawful sexually[ ]related conduct with minors" and "was under investigation for possession and distribution of child pornography," yet the district and SCCOE "suppressed, concealed or failed to disclose this information" despite both standing in a "trusting, confidential, and in loco parentis relationship" with Doe. And "there had been reports of sexual abuse and/or misconduct with children" involving Covarrubias-Padilla before or during the time he worked for SCCOE at Walden West that SCCOE or the district could have uncovered with a proper investigation.

At Walden West, Covarrubias-Padilla used authority SCCOE granted him as the night monitor—supervising minor children in a separate and secluded environment at night—to sexually abuse Doe over three nights. As a result, Doe experienced severe post-traumatic stress disorder, severe anxiety, and depression and attempted suicide multiple times.

Doe pleaded a cause of action for negligence against SCCOE and the district. Doe alleged that they breached their duty to protect her from harm by allowing her contact with Covarrubias-Padilla without supervision when they knew or should have known Covarrubias-Padilla's history of sexual misconduct.[2]

In its answer, the district generally denied Doe's allegations and asserted affirmative defenses under sections 35330 and 44808, among others.

---

[2] Doe pleaded other causes of action against SCCOE and Covarrubias-Padilla. As against SCCOE, Doe alleged claims for negligence in its hiring, retention, and supervision of Covarrubias-Padilla. As against Covarrubias-Padilla, Doe pleaded a handful of intentional tort claims.

3

**B.**     *Summary Judgment and Appeal*

In moving for summary judgment, the district relied solely on its affirmative defenses under section 35330 and section 44808 and did not assert any defect in Doe's ability to prove the elements of her negligence claim.

As to section 35330, the district argued that Doe was "deemed to have waived" her negligence claim because it was a claim "for injury . . . occurring during or by reason of [a qualifying] field trip or excursion." (§ 35330, subd. (d).) The district submitted evidence that Doe's attendance at the overnight camp was voluntary and that Covarrubias-Padilla was not employed by the district.

As to section 44808, the district argued that it could not be liable for Doe's injury when she was "not on school property" unless it had "undertaken a school-sponsored activity off . . . premises" and Doe's injury occurred when Doe was or should have been "under the immediate and direct supervision" of a district employee. The district submitted evidence that during the sleeping hours Doe was supervised by others; district teachers were only on call to provide support as needed.

Relying on section 35330 without reaching section 44808, the trial court granted the district's motion. Doe timely appealed.[3]

## II.     DISCUSSION

The district having prevailed on summary judgment, " ' "we review the record de novo to determine whether [it has] . . . demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial." ' " (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 (*Saelzler*).) Because the district in its motion chose not to dispute the facts underlying Doe's claim that the district was negligent, we

---

[3] Doe filed her notice of appeal before the trial court entered judgment for the district. We construe Doe's premature appeal as having been filed after the entry of judgment. (See *Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288.)

evaluate whether it has established any affirmative defense as a matter of law. (See *ibid*.) A defendant seeking summary judgment based upon an affirmative defense " ' " 'has the initial burden to show that undisputed facts support each element of the affirmative defense.' " ' " (*Severin Mobile Towing, Inc. v. JPMorgan Chase Bank, N.A.* (2021) 65 Cal.App.5th 292, 302, quoting *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 467–468 (*Consumer Cause*).) Summary judgment granted to a defendant who fails to produce substantial evidence supporting every element of the affirmative defense " 'would have to be reversed, even if the plaintiff failed to introduce a scintilla of evidence challenging that element.' " (*Consumer Cause*, at p. 468, italics omitted.)

The district maintains that attendance at Walden West—away from district premises and operated by SCCOE—immunized the district from liability for negligence under section 35330 or section 44808. The district relies on (1) Doe's voluntary attendance at Walden West rather than her usual school, and (2) SCCOE's provision of volunteers and SCCOE's own employee for nighttime supervision. But the district has shown neither that its students' attendance at Walden West amounted to a "field trip or excursion" subject to section 35330's deemed waiver nor that its delegation to SCCOE of "immediate and direct" nighttime supervision meant section 44808 relieved the district of liability for any negligent failure by its employees to reassert such supervision of district students before Doe was harmed.

### A.     *School Districts and Governmental Immunity*

The Constitution mandates that the Legislature "shall provide for a system of common schools" for free public education. (Cal. Const., art. IX, § 5.) " 'Local districts are the State's agents for local operation of the common school system.' " (*San Jose Unified School Dist. v. Santa Clara County Office of Education* (2017) 7 Cal.App.5th 967, 971 (*San Jose Unified*); Cal. Const., art. IX, § 5.)

A school district, like a county office of education, is a public entity.[4] (See *San Jose Unified*, *supra*, 7 Cal.App.5th at pp. 970–971; *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 207, fn. 4.) As a public entity, the district is not liable for any injury from its own or its employees' acts or omissions, "[e]xcept as otherwise provided by statute." (Gov. Code, § 815, subd. (a).) Among these statutory exceptions, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee . . . ." (Gov. Code, § 815.2, subd. (a); see also Gov. Code, § 820; *LeRoy*, *supra*, 71 Cal.App.5th at p. 742.) But vicarious liability under Government Code section 815.2 is "subject to any immunity of the public entity provided by statute." (Gov. Code, § 815, subd. (b).)

School districts bear a special responsibility for their students on school premises. (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869–870.) But their potential liability, already limited by Government Code section 815, normally excludes harm to students off school premises. (§ 44808.) Even when a district sponsors the off-campus activities, it loses the Education Code's shield against liability only in certain circumstances.

Since 1972, neither a school district nor a county board of education or superintendent, and no "officer or employee of such district or board[,] shall be responsible . . . for the conduct or safety of any pupil of the public schools at any time

---

[4] Besides the appointment or election of state education officials, the Constitution separately mandates the appointment or election of county boards of education and county superintendents of schools (Cal. Const., art. IX, §§ 7, 3) and specifies that qualifications for county superintendents are set by the Legislature (*id*., § 3.1). Each county superintendent in turn heads their county's office of education, which in turn supports the school districts of the county. (*San Jose Unified*, *supra*, 7 Cal.App.5th at p. 971.)

when such pupil is not on school property, unless such district, board, or person has undertaken" certain acts or duties, including "a school-sponsored activity off the premises of such school." (§ 44808; see Stats. 1972, ch. 979, § 1, p. 1782 [adding former § 13557.5].) But even "[i]n . . . such a specific undertaking, the district, board, or person shall be liable or responsible for the conduct or safety of any pupil only while such pupil is or should be under the immediate and direct supervision of an employee of such district or board." (§ 44808.) Outdoor science education is a school-sponsored off-campus activity that the Legislature authorized districts to provide more than two decades before the inception of what is now section 44808 immunity. (Stats. 1951, ch. 1008, § 1, pp. 2639–2640 [adding former § 10056, precursor to § 8760].)[5]

Even before the Legislature enacted what is now section 44808's limited immunity for school-sponsored off-campus activities, it recognized certain "field trips or excursions" as a specific type of off-premises activity warranting limits on district liability—irrespective of the supervision district employees did or should have provided. (§ 35330, subd. (a)(1); see *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 185; *Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 827–829 (*Barnhart*) [recognizing a field trip or excursion as "simply a narrowly defined type of [§ 44808's] more broadly defined school-sponsored activity"].) "All persons making the field trip or excursion shall be deemed to have waived all claims against the district, a charter school, or the State of California for injury, accident, illness, or death occurring

---

[5] Sections 8760 and 8765 authorize school districts and county offices of education to conduct programs or classes in outdoor science education. The county superintendent may, subject to the approval of the county board of education and state regulation, "provide for the coordination of courses of study" such as outdoor science and conservation education "among the school districts" of the county. (§§ 1703, 8767.)

7

during or by reason of the field trip or excursion."[6] (§ 35330, subd. (d); see also *Sanchez v. San Diego County Office of Education* (2010) 182 Cal.App.4th 1580, 1584 [holding that a county office of education is a " 'district' " as that term is used in the statute].) With minor modification since 1971, the relevant statute authorizes the governing board of a school district or the county superintendent of schools to "[c]onduct field trips or excursions in connection with courses of instruction or school-related social, educational, cultural, athletic, or school band activities to and from places in the state, any other state, the District of Columbia, or a foreign country for pupils enrolled in elementary or secondary schools" subject to the participants' deemed waiver of specified claims. (§ 35330, subd. (a)(1); see also Stats. 1971, ch. 1808, §§ 1, 2, pp. 3910–3911 [repealing and replacing former § 1081.5].)

## B.    *"Field Trips" and "Excursions" Under Section 35330*

The district defends the trial court's application of section 35330, maintaining that participation in the Walden West science camp was a field trip or excursion as a matter of law.  But not every school-sponsored outing is a field trip or excursion.  (*Castro v. Los Angeles Bd. of Education* (1976) 54 Cal.App.3d 232, 236 (*Castro*) [observing that otherwise "there would have been no purpose in the Legislature's *adding* [what is now § 44808]" the year after providing for the deemed waiver of liability on field trips].)  The district did not carry its initial burden of proving section 35330 applies, because it mistakenly relies on Doe's voluntary attendance at Walden West, without addressing the

---

[6] Unlike the closed environment of an outdoor science camp, where students are educated by personnel engaged by the district or by the county superintendent of schools (see §§ 8760, subd. (a)(1), 8765), a field trip or excursion may involve exposing students to the public at large in environments less susceptible to control by the district or its privies.  Thus, the Legislature could reasonably have concluded that field trips or excursion necessitated a broader statutory waiver of liability than an outdoor science camp operated by a district, county office of education, or a third party engaged to host the education program.

extent to which Walden West was designed to meet curricular requirements as a program in outdoor science education.

Because the Legislature did not define "field trip" or "excursion," courts have relied on the ordinary and usual meaning of the terms in their statutory context. (See *People v. Colbert* (2019) 6 Cal.5th 596, 603.) " 'Field trip' is defined as a visit made by students and usually a teacher for purposes of first hand observation (as to a factory, farm, clinic, museum). 'Excursion' means a journey chiefly for recreation, a usual brief pleasure trip, departure from a direct or proper course, or deviation from a definite path." (*Castro*, *supra*, 54 Cal.App.3d at p. 236, fn. 1; see also *Ramirez v. Long Beach Unified School Dist.* (2002) 105 Cal.App.4th 182, 189, fn. 4; *Wolfe v. Dublin Unified School Dist.* (1997) 56 Cal.App.4th 126, 134 [applying same definition of " 'field trip' " in holding visit to a farm was a field trip].)

Unlike students who travel for the observational or recreational purposes served by field trips or excursions so defined, however, "[s]tudents who are off of the school's property for required school purposes are entitled to the same safeguards as those who are on school property, within supervisorial limits." (*Castro*, *supra*, 54 Cal.App.3d at p. 236.) In holding that the plaintiff had adequately alleged that a high school's ROTC summer camp was not a field trip, the *Castro* court reasoned that the plaintiffs in *Castro* were entitled "to prove, if they can, that the ROTC 'summer camp, bivouac and summer training' " at which their son died "was just as much a part of the school curriculum as a school-sponsored band or orchestra performance at an off-premises event." (*Id.* at p. 237.) So the hallmark of a field trip or excursion under section 35330 is that its observational or recreational purpose represents a departure from a school's curriculum and required school purposes. (See *Barnhart*, *supra*, 76 Cal.App.4th at p. 827 ["under

9

*Castro*, the test is not really whether the student's participation was voluntary . . . , but whether the off-premises activity was part of the school curriculum"].)[7]

We acknowledge that "field trips or excursions" could be susceptible to a broader definition that encompasses *any* school-sponsored group travel to a specific destination—the only limitation being that the travel be "in connection with courses of instruction or school-related social, educational, cultural, athletic, or school band activities." (§ 35330, subd. (a)(1).) But we construe the Legislature's use of "field trips or excursions" in the broader statutory context: As we have explained, the Legislature had in 1951 authorized districts to "[c]onduct programs and classes in outdoor science education and conservation education" even outside district boundaries or to contract with other public entities for the joint operation of such programs. (Stats. 1951, ch. 1008, § 1, p. 2639.) In 1963, it authorized county superintendents to contract with school districts to provide programs or classes in outdoor science education. (Stats. 1963, ch. 251, § 9, pp. 1011–1013.) And by 1970, the Legislature prescribed the development of environmental education programs. (See §§ 8700, 8702, 8707; Stats. 1970, ch. 1616, § 2, pp. 3393–3397 [adding former § 565 et seq.].) Although the Legislature could have deemed participants in outdoor science education to have waived all claims just as it would for field trips and excursions, it did not and has not. The separate treatment of outdoor science education and field trips or excursions suggests that they are distinct forms of school-sponsored off-premises activities, and we view as significant the absence of a deemed waiver in the context of outdoor science education. We also note that in nearly a half century since *Castro* announced its rule, the Legislature has taken no action to

---

[7] The *Castro* standard finds support in the legislative history of section 35330 and its original purpose of permitting educational field trips to Mexico outside the regular academic calendar. (Frank A. Mesplé, bill memorandum to Governor Brown re Assem. Bill No. 655 (1965 Reg. Sess. Apr. 26, 1965); Stats. 1965, ch. 222, § 1, p. 1193; Chairman Charles B. Garrigus, letter to Governor Edmund G. Brown re Assem. Bill No. 655 (1965 Reg. Sess. Apr. 27, 1965).)

override it. Though not dispositive of the legislative intent in 1965, this apparent legislative acquiescence affords us no reason to question *Castro*'s "required school purposes" standard here.

The district's evidence did not suggest any purely observational or recreational purpose. That students who opted out of attending Walden West were to remain at Ida Jew Academy for science education suggests the required school purpose that, as in *Castro*, would exempt an off-premises activity from section 35330's deemed waiver of claims. This alone would have prevented the district from meeting its initial burden. (See *Consumer Cause*, *supra*, 91 Cal.App.4th at p. 468.)

We also consider Doe's undisputed evidence. (See Code Civ. Proc., § 437c, subd. (c) ["summary judgment shall be granted if *all* the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (italics added)].) Even if the moving party's evidence is by itself insufficient to assess all dimensions of the initial burden it undertook, the opponent's evidence may fill gaps in the district's showing. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 749–751; see also *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 497, fn. 10 [following *Villa*]; *White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 363 [same].) But Doe's evidence does not assist the district in its initial burden.

Doe as the nonmoving party is entitled to reasonable inferences in her favor. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037; *Saelzler*, *supra*, 25 Cal.4th at p. 768.) Ample evidence invites a reasonable inference that Walden West was a program in outdoor science education that was an expected feature of the district's science curriculum, and that it was operated by the SCCOE in conjunction with district teachers. Walden West provided "programs and classes in outdoor science education and conservation education," a statutory educational priority. (See § 8760, subd. (a)(1), (3).) Walden West was billed as a school, and students attended the outdoor school for four

11

days in the academic year in lieu of science education in their usual district classrooms. Under the district's contract with SCCOE, SCCOE provides most of the personnel necessary to run the camp—including cabin leaders and an overnight supervisor—while the district provides one credentialed teacher for every class of 36 students or less to "help[] the program run." Viewed in the light most favorable to Doe, the record suggests that SCCOE and the district contracted to jointly operate the outdoor school's science education program, as contemplated by statute. (§§ 8760, 8765 [specifying that "all of the powers and duties authorized for . . . school districts by Section 8760 are powers and duties of the county superintendent . . . provid[ing] programs and classes in outdoor science education . . . ."].) A reasonable trier of fact could accordingly conclude that attendance at Walden West was neither a field trip nor an excursion, because it was neither a mere observational visit nor a recreational departure from the usual educational course.[8]

That Doe could have declined to attend Walden West and instead participated in classroom science education at her school does not alter our analysis. (*Barnhart*, *supra*, 76 Cal.App.4th at p. 827.) In arguing otherwise, the district selectively relies on *Castro*. True, *Castro* reasoned that "[s]tudents who participate in nonrequired trips or excursions, though possibly in furtherance of their education but not as required attendance, are effectively on their own; the voluntary nature of the event absolves the district of liability." (*Castro*, *supra*, 54 Cal.App.3d at p. 236.) But in distinguishing voluntary from

---

[8] One court has treated a five-day outdoor science program—" 'sixth grade camp' "—as a field trip, without dispute or reference to section 8760. (*Sanchez*, *supra*, 182 Cal.App.4th at p. 1582.) But there the sole issue on appeal was whether the county office of education, which operated the camp, met the definition of a "district" under section 35330. (*Sanchez*, at p. 1582.) Here, on a summary judgment record where the district relied on the voluntariness of the program, we need not decide whether a curricular school camp program can also be treated (in whole or in part) as a field trip or excursion if it includes both curricular and extracurricular elements.

mandatory activities, the focus in *Castro* was on whether the activity served a "required school purpose[]," not whether the district could compel participation in an off-premises activity as the sole means of satisfying that required purpose. (*Ibid*.) There is no dispute that science education is a required school purpose, whether the means of satisfying that required purpose is outdoor science education at a camp like Walden West or classroom learning on school premises with those students who opt out of the school camp program. The voluntary choice to attend Walden West for a program in outdoor science education rather than satisfying the required school purpose by science education at a student's customary school does not make attending Walden West a field trip or excursion subject to section 35330's deemed waiver of claims.

## C.    *Section 44808*[9]

The district alternatively contends that section 44808 entitled it to summary judgment because its employees were not, and should not have been, providing immediate and direct supervision when Doe was injured. It is beyond dispute that the district and its employees on site at Walden West relied on SCCOE to provide Doe's immediate and direct supervision overnight while district teachers were sleeping but on call. What remains in dispute is whether district employees should have assumed immediate and direct supervision of Doe overnight, rather than allowing any SCCOE cabin leader to send Doe to Covarrubias-Padilla. As we will explain, the district's contractual division of labor with SCCOE did not negate the existence of any duty to provide Doe immediate and direct supervision. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

_____

[9] Although the trial court did not reach this alternate ground for summary judgment, we must affirm if summary judgment was proper on any ground advanced in the trial court. (*Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031.) The parties addressed section 44808 both in the trial court and on appeal, in their original briefs and supplemental briefing we requested. (See Code Civ. Proc., § 437c, subd. (m)(2).)

Section 44808 limits a school district's liability for the negligence of its employees under Government Code section 815.2 to "the schoolground" barring one of section 44808's exceptions, which include but are not limited to school-sponsored activities off of school premises. (*Castro*, *supra*, 54 Cal.App.3d at p. 235 [discussing former § 13557.5, which was since renumbered as § 44808]; see also *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1356 (*Cerna*) [" '[S]ection 44808 limits the liability of schools for after-hours, off-campus activity, absent a specific undertaking' "].)[10] " 'In essence, [section 44808] grants a district immunity unless a student was (or should have been) directly supervised during a specific undertaking.' " (*Mosley v. San Bernardino City Unified School Dist.* (2005) 134 Cal.App.4th 1260, 1265; see also *LeRoy*, *supra*, 71 Cal.App.5th at p. 744 [district not liable where student committed suicide off campus during a summer break, when "he was not and should not have been supervised" by any district employee].)

The limitation of liability to circumstances where the "pupil is or should be under the immediate and direct supervision of an employee of such district or board" (§ 44808)

---

[10] Another express exception to section 44808 immunity is where the district "has failed to exercise reasonable care under the circumstances." In *Hoyem v. Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, the Supreme Court held that a school district could be deemed liable for negligent supervision on school premises, if that negligence allowed a student to leave campus and suffer an off-campus injury. (*Hoyem*, at pp. 512, 523.) In so holding, the high court stated both that section 44808 allows liability whenever a district " 'has failed to exercise reasonable care' " and that the statute was principally intended to shield districts from liability before or after school hours while children are traveling to or from school. (*Hoyem*, at p. 517.) The *Cerna* court observed that "[l]itigants and jurists" had since then "grappled" with what it called *Hoyem*'s "problematic" language. (*Cerna*, *supra*, 161 Cal.App.4th at p. 1356.) Faced with these "apparently conflicting interpretations of section 44808," the weight of authority has settled on the proposition "that school districts are not responsible for the safety of students outside school property absent a specific undertaking by the school district and direct supervision by a district employee." (*Cerna*, at pp. 1356, 1357.) Our analysis does not require us to reach this provision of section 44808.

" 'draws a line between activities requiring additional supervision and control over the students when they travel, and the multitude of off-campus school-related activities for which liability cannot be imposed.' " (*Patterson v. Sacramento Unified School Dist.* (2007) 155 Cal.App.4th 821, 830 (*Patterson*).)

There is no dispute that Doe's injury occurred off school property at Walden West, satisfying section 44808's threshold requirement for immunity. We agree with Doe that the district undertook a school-sponsored off-campus activity by having district students attend the science camp. (See *Patterson*, *supra*, 155 Cal.App.4th at p. 830 [" '[T]he test is . . . whether the off-premises activity [is] part of the school curriculum,' " even if student participation in that off-premises curriculum is not mandatory].) So the district is immune from liability unless Doe was or should have been under a district employee's immediate and direct supervision when she was assaulted. (§ 44808; see also *Patterson*, at p. 830.)

The district's evidence that its employees were not directly supervising Doe when she was assaulted is undisputed. It was SCCOE that supplied cabin leaders to sleep in cabins with the students and a nighttime supervisor to assist if problems arose. Doe alleged that the cabin leader repeatedly sent her to Covarrubias-Padilla, the nighttime supervisor, because she was talking in her sleep, and Covarrubias-Padilla repeatedly assaulted her while she was in his care.

But the parties dispute whether the district *should have* been providing immediate and direct supervision when Doe was assaulted and, more fundamentally, whether what "should be" depends solely on the scope of the district's contractual division of labor with SCCOE or on what the totality of the circumstances reasonably called for. The district maintains that—by virtue of its contractual delegation of immediate and direct supervision to SCCOE—district employees should have had no responsibility for Doe's overnight welfare unless summoned by an SCCOE volunteer or employee. Doe maintains that the district should have been providing immediate and direct supervision to Doe at

15

the time of her injury, because the district failed to adequately scrutinize SCCOE's hiring, training and supervision of its employees and because district employees knew or should have known that Covarrubias-Padilla and SCCOE's volunteers could not be entrusted with overnight supervision of students.[11]

We construe the words of the statute " 'in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject [that] must be harmonized, both internally and with each other, to the extent possible.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)  In doing so, we " 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose' " and avoid constructions " 'making some words surplusage.' " (*Ibid*.)  The district's narrow view is that the scope of supervision it should have provided is determined by its contract with SCCOE, without reference to the circumstances known to district employees capable of providing immediate and direct supervision themselves or causing other district employees to provide that supervision.

We decline the district's invitation to read section 44808's "should be" language as satisfied only when a district has expressly pledged its own employees to provide immediate and direct supervision overnight but the employees then failed to do so.  (Cf. *Brinsmead v. Elk Grove Unified School Dist.* (2023) 95 Cal.App.5th 583, 593 [holding that parents adequately alleged student should have been under district supervision when she left school bus stop because the district's transportation program provided that the

---

[11] In addition to school-sponsored off-premises activities, section 44808 provides exceptions to its immunity where the entity "has otherwise specifically assumed such responsibility [for the conduct or safety of any pupil off school property] or liability or has failed to exercise reasonable care under the circumstances."  Because Walden West was a school-sponsored off-premises activity, we need not address whether the district "otherwise" assumed responsibility for Doe's conduct or safety or if it assumed responsibility by failing to exercise reasonable care.  (Compare *Hoyem*, *supra*, 22 Cal.3d at p. 517 with *Cerna*, *supra*, 161 Cal.App.4th at pp. 1356–1357.)

bus would pick her up earlier]; *Patterson*, *supra*, 155 Cal.App.4th at p. 832 [holding that instructors should have been supervising off-campus community service project because they expressly and properly undertook that supervision].) In the district's interpretation, its delegation of immediate and direct supervision to SCCOE would shield it from liability even if the district had known SCCOE's identified supervisor to be a pedophile. This maximalist view of immunity reads too narrowly the "should be" limitation on section 44808's exceptions. The statute provides immunity if the "pupil . . . should be under the immediate and direct supervision of" a district employee; it does not limit the potential reasons that might oblige district employees to provide first-line rather than on-call supervision, even overnight. And the district supplies no authority for the proposition that its obligations to SCCOE under their Walden West contract delimit its duties to students such as Doe. The district's contract with SCCOE only provides for indemnification, not immunity.

Even so, we reject Doe's assertion that the district has a duty to provide immediate and direct supervision around the clock for the duration of any school-sponsored off-campus activity. Relying on *Castro* to argue that students in school-sponsored activities are entitled to the district's immediate and direct supervision whether on or off school property, Doe omits the express limitation in her chosen authority: "Students who are off of the school's property for required school purposes are entitled to the same safeguards as those who are on school property, *within supervisorial limits*." (*Castro*, *supra*, 54 Cal.App.3d at p. 236, italics added; see also *Srouy v. San Diego Unified School Dist.* (2022) 75 Cal.App.5th 548, 568 [discussing role of § 44808 in "limiting the circumstances under which a school district is responsible for supervising students"].) Doe does not explain how district employees could at all times have been individually responsible for immediate and direct supervision of students while at Walden West, even overnight when those employees were themselves entitled to sleep, apart from the students, subject only to on-call responsibilities.

Nor do we read section 44808 as categorically precluding the district from delegating immediate and direct supervision to SCCOE without independently investigating SCCOE's recruitment, training, and supervision of SCCOE employees and volunteers. The district contracted not with just any third party but with the office of an independent constitutional officer vested by statute with equal powers and duties in this school camp program (see § 8765)—for SCCOE to provide immediate and direct overnight supervision of district students. Nothing in section 44808's "should be" language makes the district vicariously liable for SCCOE's screening, hiring, training, and supervision decisions. Section 44808 exempts the district from liability when the student is off school grounds unless an exception is satisfied; it does not create new liability or new duties.[12]

Turning to the facts before us, elementary school students were participating in a four-day overnight science camp. It is reasonable to infer from the nature of this undertaking that some level of immediate and direct supervision was required during sleeping hours, particularly for any students who woke during the night or who, like Doe, were sufficiently sleep-disordered that they disturbed the other students. Doe's burden at trial will be to establish that a district employee breached a duty to Doe in the course of employment and that this employee's breach was a substantial factor in causing Doe's harm. But the district's burden in seeking summary judgment based on section 44808

_____

[12] To be sure, Government Code section 895.2 provides that contracting public entities will be jointly and severally liable "upon any liability which is imposed by any law other than this chapter upon any one of the entities . . . for injury caused by a negligent or wrongful act or omission occurring in the performance of such agreement." But like all other provisions of liability in the same part, Government Code section 895.2 is "subject to any immunity of the public entity provided by statute." (Gov. Code, § 815, subd. (b).) So even if Government Code section 895.2 might otherwise make the district jointly and severally liable with SCCOE, Education Code section 44808 would supersede any such liability unless employees of the district itself were or should have been providing immediate and direct supervision when SCCOE's nighttime supervisor abused her.

immunity was to demonstrate not only that Doe was not under the immediate and direct supervision of district employees when she was harmed but that, given the totality of the circumstances, no district employees owed Doe their immediate and direct supervision.

Considering the dispute as framed by the pleadings (see *Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 289–290), the district failed to make a prima facie showing its employees could have no duty of immediate and direct overnight supervision over Doe, under the circumstances. This is because the district has not, in its motion, challenged Doe's allegation that SCCOE's chosen nighttime supervisor, Covarrubias-Padilla, was known to be a danger to children and therefore unsuited to supervising them. Nor has the district challenged Doe's allegation that the district knew or should have known the factual basis for his unsuitability. We acknowledge Doe's evidence that the district did not know the identity of SCCOE's nighttime supervisor before the abuse. But we construe the limited factual record in Doe's favor as the nonmoving party, and the district has not disputed Doe's claim that its employees knew at least one of SCCOE's Walden West employees could not be trusted with immediate and direct supervision of children. The district did not carry its initial burden, and Doe's evidence does not remedy that failure of proof.[13]

As we have explained, we accept that a school district may delegate immediate and direct supervision of its students to another public entity that by statute has the same "powers and duties" that the district would in operating an outdoor science camp. (§ 8765.) We do not suggest that the district had an affirmative obligation to independently investigate SCCOE's hiring, training, or supervision of SCCOE employees

---

[13] To the extent an analysis of what the district or its employees knew or should have known about Covarrubias-Padilla or any SCCOE employees connected with Walden West requires an analysis of predicate facts, the district set forth no facts to negate Doe's allegations on that point.

19

and volunteers.[14]  But we decline to rule that a district may withhold immediate and direct supervision during school-sponsored off-premises activity in the face of known threats to its students' safety.

We acknowledge the practical reality that any chink in public entity immunity may invite claims and the burden of defending even unsuccessful claims.  (See, e.g., *Sandoval v. Pali Institute, Inc.* (Aug. 13, 2025, G063037) ___ Cal.App.5th ___ [pp. 33–34] [2025 WL 2331662] [reversing denial of anti-SLAPP motion to strike complaint alleging negligent and intentional infliction of emotional distress from science camp counselor's use of "they/them" as preferred pronouns].)  But as the district's counsel noted at oral argument, we read statutory authorities as we find them, without substituting our own policy judgments for that of the Legislature.  As we have explained, outdoor science education predates by more than 20 years the inception of the immunities on which the district would rely; nothing prevents the Legislature from again taking action to enlarge the scope of those limitations on district liability.

### III.   DISPOSITION

The March 15, 2023 judgment in favor of the district is reversed.  Doe is entitled to her costs on appeal.

---

[14] Assuming without deciding that some additional assurance that another public entity is one to whom supervision could be entrusted may be required as a precondition of section 44808 immunity, micromanagement is not.  (See generally *Castro*, *supra*, 54 Cal.App.3d at p. 236.)  And we express no opinion on the sufficiency of Doe's allegations or evidence on elements of her cause of action that the district has not challenged.  Because of its maximalist view of statutory immunity, the district made no attempt to negate breach or causation.

20

_____

LIE, J.


I CONCUR:



_____

GREENWOOD, P. J.



I CONCUR IN THE JUDGMENT ONLY:



_____

WILSON, J.



*Doe v. Mount Pleasant Elementary School District*
H050830

WILSON, J., Concurring.

I concur in the result.  I write separately because I would not decide whether the school district carried its burden on summary judgment of establishing as a matter of law that Walden West constituted a "field trip or excursion" within the meaning of section 35330. (Maj. opn., *ante*, at pp. 8–13.) Instead, I would hold that, even assuming Walden West was a field trip or excursion, section 35330, subdivision (d), does not provide absolute immunity as the trial court held, but rather provides a "deemed waiver" of claims, by which the Legislature intended to limit the liability of school districts to a lesser degree.  Within that framework, the school district failed to carry its initial burden on summary judgment of demonstrating that Doe's negligence claim was "deemed waived" as a matter of law.

I would then also hold, as the majority does, that the school district failed to carry its initial burden of demonstrating it is not liable as a matter of law pursuant to section 44808.

### A.  The "deemed waived" provision of section 35330, subdivision (d)

Section 35330, subdivision (d), uses the phrase "deemed to have waived," in contrast to other statutes which expressly limit public entity liability or provide immunity to a public entity by stating that the entity "is not" or "shall not be liable."  Section 44808, for instance, provides that "no school district … shall be … in any way liable for the conduct or safety of any pupil" in the specified circumstances.  (§ 44808.)

Similarly, the Government Claims Act statutes enumerate dozens of express limitations of liability, and use identical or comparable language, providing that "a public entity is not liable," or that "no [specified government entity or employee] is liable …" in various contexts.  (See, e.g., Govt. Code, §§ 816, 818, 818.2, 818.4, 818.6, 818.7, 818.8, 818.9, 820.2, 820.4, 820.6, 820.8, 820.9, 821, 821.2, 821.4, 821.5, 821.6, 821.8, 822,

822.2, 823, 830.6, 830.8, 830.9, 831, 831.2, 831.25, 831.3, 831.4, 831.6, 831.7, 831.7.5, 831.8.)

Comparable or identical language is used for limitations of liability relating to police and correctional activities (Gov. Code, §§ 844–846), fire protection (Gov. Code, §§ 850–850.8), unmanned aircraft (Gov. Code, §§ 853–853.5), medical, hospital and public health activities (Gov. Code, §§ 854–856.6), administration of tax laws (Gov. Code, §§ 860–860.4), use of pesticides (Gov. Code, § 862), and activities to abate an impending peril (Gov. Code, §§ 865–867).

In section 35330, subdivision (d), though, the Legislature elected to use different language. I do not presume that the Legislature's use of "deemed to have waived" in one statute, and "shall not be liable" in another, was careless or meaningless. I presume instead that the Legislature intended the terms to have different meanings, rather than be considered interchangeable.

"When confronted with two statutes, one of which contains a term, and one of which does not, we do not import the term used in the first to limit the second. Instead, it is our obligation to interpret different terms used by the Legislature in the same statutory scheme to have different meanings." (*Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879, citing *Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352; *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 [when Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded]; *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning."]; *Craven v. Crout* (1985) 163 Cal.App.3d 779, 783 ["Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent."]; *Campbell v. Zolin* (1995) 33 Cal.App.4th

489, 497 ["Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning."].)

Therefore, I construe "deemed to have waived" to have a different meaning than the immunities and limitations on liability set forth in the other statutes discussed above, including section 44808.

Section 35330, subdivision (d), does not define "deemed to have waived."  To ascertain the phrase's meaning, then, I rely on its well-established legal meaning, if one exists.  As Doe argued on appeal:  "when a word used in a statute has a well-established legal meaning, it *will* be given that meaning in construing the statute." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19, citing *Harris v. Reynolds* (1859) 13 Cal. 514, 518 ["The rule of construction of statutes is plain. Where they make use of words and phrases of a well-known and definite sense in the law, they are to be received and expounded in the same sense in the statute."].)

"Waiver" has a well-established legal meaning in numerous statutory and other contexts.  The California Supreme Court recently construed "waiver" as it applied to a party's right to disqualify a judge under Code of Civil Procedure section 170.3(b)(2). (*North American Title Co. v. Superior Court* (2024) 17 Cal.5th 155 (*North American Title Co.*).)  That section provides:  "There shall be no waiver of disqualification if the basis therefor is either of the following: [¶] (A) The judge has a personal bias or prejudice concerning a party. [¶] (B) The judge served as an attorney in the matter in controversy, or the judge has been a material witness concerning that matter."  (Code Civ. Proc., § 170.3, subd. (b)(2).)

As part of its interpretation of that statute, the Court focused on the common meaning of "waiver."  It explained that "waiver is the 'intentional relinquishment or abandonment of a known right.' " (*North American Title, supra,* 17 Cal.5th at p. 178, quoting *U.S. v. Olano* (1993) 507 U.S. 725, 733; see also *People v. Aguilar* (1984) 35

3

Cal.3d 785, 794 ["classic definition of a waiver — "an intentional relinquishment or abandonment of a known right' "].) " 'Waiver' is not properly used to describe a circumstance other than when a party voluntarily relinquishes or abandons a known right." (*North American Title, supra*, 17 Cal.5th at p. 178.)

The Court has held in other contexts that waiver "always rests upon intent." (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475 (*Lynch*), citing *City of Ukiah v. Fones* (1964) Cal.2d 104, 107 (*City of Ukiah*).) "The intention may be express, based on the waiving party's words, or implied, based on conduct that is ' "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." ' " (*Lynch, supra*, at p. 475, quoting *Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 598.)

Because the waiver in section 35330, subdivision (d), is "deemed" by the Legislature, the relevant question is not what rights or claims a particular plaintiff may have intended to relinquish, but rather what rights or claims the Legislature intended to deem waived.

I find the law regarding contractual waivers instructive here, insofar as it reflects a general public policy against waivers of liability for gross negligence or intentional torts.[15]  The California Supreme Court has explained that, " '[t]raditionally the law has looked carefully and with some skepticism at those who attempt to contract away their legal liability for the commission of torts.' " (*City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 754 (*City of Santa Barbara*).  "The traditional skepticism concerning agreements designed to release liability for future torts … long has been expressed in Civil Code section 1668 [], which (unchanged since its adoption in 1872) provides: 'All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his [or her] own fraud, or willful injury to the person or

_____

[15] I am not aware of any other statute, and the parties have not identified any, that provides a "deemed waiver" as in section 35330, subdivision (d).

4

property of another, or violation of law, whether willful or negligent, are against the policy of the law.' " (*City of Santa Barbara, supra,* at pp. 754–755 ["Exploring the meaning and characteristics of the concept of 'public interest,' " the Court recognized a general rule that an " '*exculpatory clause which affects the public interest cannot stand*' "].)

In *City of Santa Barbara*, the California Supreme Court considered the enforceability of an agreement purporting to waive the city's liability for future gross negligence in the context of sports and recreational services for developmentally disabled children. (*City of Santa Barbara, supra*, 41 Cal.4th at p. 747.) The Court began by articulating the distinction between ordinary negligence—a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm—and gross negligence, defined as either a want of even scant care or an extreme departure from the ordinary standard of conduct. (*Id*. at pp. 754–755, citing *Donnelly v. Southern Pacific Co.* (1941) 18 Cal.2d 863, 869; *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1185–1186.)

The Court concluded that "public policy generally precludes enforcement of an agreement that would remove an obligation to adhere to even a *minimal* standard of care," and applying that general rule to the facts of its case, it held that "an agreement purporting to release liability for future gross negligence committed against a developmentally disabled child who participates in a recreational camp designed for the needs of such children violates public policy and is unenforceable." (*City of Santa Barbara, supra*, 41 Cal.4th at p. 777; see *id.* at p. 779 [courts are not precluded from drawing legal distinctions between ordinary negligence and more aggravated categories of misconduct].) Analogizing to the context of active sports, the Court emphasized the concept of "inherent risks" in an activity: "a defendant generally has no duty to eliminate, or protect a plaintiff against, risks inherent in a sport—that is, against ordinary careless conduct considered to be part of the sport. [Citation.] And yet … such a

5

defendant nevertheless may be liable for conduct 'so *reckless* as to be totally outside the range of the ordinary activity.' " (*Id*. at p. 779, citing *Knight v. Jewett* (1992) 3 Cal.4th 296, 320–321.)

Thus, while an agreement that releases liability for future ordinary negligence is enforceable, "to the extent it purports to release liability for future gross negligence, violates public policy and is unenforceable." (*City of Santa Barbara, supra*, 41 Cal.4th at p. 751 [distinction between ordinary and gross negligence reflects a " 'rule of policy' that harsher legal consequences should flow when negligence is aggravated instead of merely ordinary"]; see also *Joshi v. Fitness International, LLC* (2022) 80 Cal.App.5th 814, 825 (*Joshi*).)

Even outside the context of gross negligence, "California courts long have voided agreements releasing liability for future ordinary negligence in the context of such socially important matters as medical services, auto repair, banking, and day care. …" (*City of Santa Barbara, supra,* 41 Cal.4th at p. 773, fn. 46, citing *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92.)

Of course, the "deemed waiver" in section 35330, subdivision (d), is not a contract, but a statute. It is, therefore, a determination of public policy by the Legislature in the first place. (*City of Santa Barbara, supra*, 41 Cal.4th at p. 777, citing *Jensen v. Traders & Generals Insurance Co.* (1959) 52 Cal.2d 786, 794 ["[t]he determination of public policy of states resides, first, with the people as expressed in their Constitution and, second, with the representatives of the people—the state Legislature"].) The task, then, is to interpret section 35330, subdivision (d), to discern what the Legislature intended that public policy to be.

In light of the law regarding "waivers," and the public policies regarding liability for gross negligence enumerated by the California Supreme Court in *City of Santa Barbara*, I would conclude that section 35330, subdivision (d), does not confer absolute immunity on school districts, or provide that a school district "shall not be liable" under

6

any circumstances for harm suffered during a field trip or excursion. Instead, by using the phrase "deemed to have waived," the Legislature intended to limit the liability of school districts to a lesser degree—one that does not include claims for gross negligence or intentional torts.

The history and legislative policy behind section 35330 support this construction of the statute. The statutory scheme was "designed to encourage the use of field trips as an important part of enhancing the educational process." (*Sanchez v. San Diego County Office of Education* (2010) 182 Cal.App.4th 1580, 1584 (*Sanchez*), citing Assem. Com. on Education, Analysis of Assem. Bill No. 766 (2007–2008 Reg. Sess.) as amended April 9, 2007, p. 6.) While that includes a legislative policy of incentivizing field trips in part by not imposing burdensome costs on school districts that undertake them, it does not follow that the Legislature intended to provide school districts with blanket immunity from any and all claims.

The policy of incentivizing educational field trips cuts both ways. A statutory scheme that leaves young schoolchildren "effectively on their own," with no legal recourse against a school district *under any and all circumstances* for failing to appropriately protect the safety of those children, would likely discourage parents from allowing their children to participate. (See, e.g., *Castro v. Los Angeles Board of Education* (1976) 54 Cal.App.3d 232 (*Castro*) ["[s]tudents who participate in nonrequired trips or excursions, though possibly in furtherance of their education but not as required attendance, are effectively on their own; the voluntary nature of the event absolves the district of liability"].)

And, significantly, providing absolute immunity to school districts for all injuries suffered by students on field trips—such as those alleged here by Doe—would run counter to the compelling state interest of protecting children from sexual abuse. (*People v. Gonzalez* (1978) 81 Cal.App.3d 274, 277; see also, *People v. Patten* (1992) 9

7

Cal.App.4th 1718, 1726 [state has compelling interest in safeguarding physical and psychological well-being of minors and victims of sexual offenses].)

Indeed, the school district's interpretation of section 35330, subdivision (d), would violate a central maxim of statutory interpretation—that a provision not be construed to result in absurd consequences the Legislature did not intend. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 737.) In my view, a statutory scheme that allows elementary school children to be "effectively on their own" at a week-long off-campus outdoor science camp, with no potential legal recourse against a school district, for even grossly negligent or intentionally tortious conduct related to the children under their care, would be absurd. I do not believe that providing absolute immunity to a school district, even in the face of evidence which might undisputably demonstrate a want of even scant care or an extreme departure from the ordinary standard of conduct, is what the Legislature intended.

The school district argues that the "plain and unambiguous provision of field trip immunity in [§ 35330, subd. (d)] creates a conclusive presumption of immunity based upon the waiver of liability." It characterizes this as "absolute immunity," and asserts that "there is no type of injury occurring during a field trip that escapes" it. According to the district, "the language of [§ 35330, subdivision (d)] is plain and clear - to promote field trip opportunities among California public school students, there ***shall be no liability on the part of a school district for injuries occurring during same***."

The school district mischaracterizes the statute, which—in contrast to section 44808—does not use the words "there shall be no liability," "shall not be liable," or "is not liable." (§ 35330, subd. (d).) As discussed above, when the Legislature intends for there to be no liability, it knows the exact words to use to convey such a meaning.

The case law the school district relies on does not support its interpretation of the statute, either. The earliest such case was *Castro*, in which a high school student died while participating with his R.O.T.C. unit at an off-campus summer training event that

8

was organized by, and under the supervision and control of employees of the defendant board of education. (*Castro, supra*, 54 Cal.App.3d at p. 234.) The student's parents sued the board, alleging that their son's death occurred as a result of the board's negligence. (*Ibid*.) The board demurred on the basis of section 1081.5, the predecessor to section 35330, and the trial court sustained the demurrer. (*Castro,* at p. 234.)

The court of appeal first addressed the interplay between section 1081.5 and section 13557.5, the predecessor statute to section 44808, noting "the difference in words used to describe the *events* delineated in section 13557.5 (school sponsored activity) and that event referred to in the immunity statute, section 1081.5 (field trip or excursion)." (*Castro, supra*, 54 Cal.App.3d at pp. 235–236.) In reversing the judgment, the court explained that the allegations in the operative complaint were "sufficient to place the plaintiffs within the ambit of section 13557.5 [44808] and not under the disability of immunity provisions of section 1081.5 [35330]." (*Castro, supra,* at p. 237.) The court stated that "there would have been no purpose in the Legislature's adding section 13557.5 [now 44808] to the Education Code at its 1972 session if by its amendment of section 1081.5 [now 35330] of the same code, it provided absolute immunity from liability for the same away-from-school activity." (*Castro,* at p. 236.)

Because the court ultimately held that section 1081.5 did not apply, based on the nature of the ROTC activity, it conducted no analysis of the scope of the "deemed waiver" provision in section 35330, subdivision (d). I do not consider it authority for the proposition that section 35330, subdivision (d), provides absolute immunity to a school district from all claims, and nothing in *Castro* explains or justifies such an interpretation.

The same is true of subsequent caselaw that relied on *Castro*. In *Wolfe v. Dublin Unified School District* (1997) 56 Cal.App.4th 126 (*Wolfe*), for example, a first-grade student was injured on the way home from a "field trip" to a family farm when the car of the parent driver with whom he was riding collided with a truck. The student's parents sued the school district for negligence, and the trial court granted the district's motion for

9

summary judgment. (*Id*. at p. 128.) The court of appeal followed the holding and analysis in *Castro* and found section 35330, subdivision (d), applicable. (*Wolfe, supra,* at p. 134.)

Again, though, the court did not analyze the scope of the "deemed waiver" provision—it merely held that the statute applied and the claim at issue was barred. (*Wolfe, supra,* 56 Cal.App.4th at p. 137.) As with *Castro*, I do not consider *Wolfe* authority for the proposition that section 35330, subdivision (d), provides absolute immunity to a school district from any conceivable claim.

Also, in *Barnhart v. Cabrillo Community College* (1999) 76 Cal.App.4th 818, 827 (*Barnhart*), a different panel of this court considered a regulation applicable to community college districts (Cal. Code Regs. tit. 15, § 55450) that included a deemed waiver of claims in language identical to section 35330, subdivision (d). (*Barnhart, supra,* at p. 818.) The plaintiffs were college soccer players injured in a car crash while being driven to a game by a school employee. (*Id*. at p. 821.) As this court explained, the question boiled down to whether the plaintiffs were on a field trip or excursion—if they were, "then there is immunity." (*Id*. at p. 828.) After concluding that the plaintiffs were on a field trip, this court held that "the special or specific immunity statute [section 35330] applies." (*Barnhart,* at p. 829.)

However, *Barnhart* did not analyze the scope of the so-called "immunity" in section 35330, subdivision (d), or suggest that the immunity is absolute. (See also, *Myricks v. Lynwood Unified School Dist.* (1999) 74 Cal.App.4th 231, 240. [no analysis of scope of waiver provision]; *Sanchez, supra*, 182 Cal.App.4th at p. 1584 [parties agreed regarding nature of field trip immunity; issue presented to court dealt with legislative intent as to what entities are entitled to its protections]; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177 (*Casterson*) [considering only whether statute applies to employees of school districts].)

10

In sum, there does not appear to any published authority which has expressly considered the scope of the "deemed waiver" provision of section 35330, subdivision (d), or which has dealt with facts similar to those at issue here. I would conclude, as explained above, that section 35330, subdivision (d), does not confer absolute immunity on school districts, or provide that a school district "shall not be liable" under any circumstances for harm suffered during a field trip or excursion, but instead limits the liability of school districts to a lesser degree—one that does not include claims for gross negligence or intentional torts.

### B. The school district's initial burden on summary judgment

I would then conclude that, within that framework of section 35330, subdivision (d), the school district failed to carry its initial burden of demonstrating that Doe's negligence claim was "deemed waived" as a matter of law.

To prevail on summary judgment, the school district must have demonstrated that Doe's negligence claim was "deemed waived" pursuant to section 35330, subdivision (d), as a matter of law. (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289–290.) That is, the school district must have shown that Doe's claim is the type of claim the Legislature intended to deem waived in the context of a field trip or excursion. A party asserting waiver has the burden to prove it by clear and convincing evidence, and " 'doubtful cases will be decided against a waiver.' " (*City of Ukiah, supra*, 64 Cal.2d at pp. 107–108, citing *Church v. Public Utilities Com.* (1958) 51 Cal.2d 399, 401 ["This is particularly apropos in cases in which the right in question is one that is 'favored' in the law"].)

Here, the school district made no showing regarding the scope of the deemed waiver or the nature of Doe's claim, because it argued only that section 35330, subdivision (d), provides "absolute immunity," thereby barring the claim. The school district's separate statement of undisputed facts in support of its motion for summary judgment asserted only that: Doe was a fifth-grader when she voluntarily attended

11

Walden West; Doe understood that if she chose not to attend Walden West, she would remain at her school campus; Covarrubias-Padilla and the cabin leaders were not district employees; Covarrubias-Padilla's sexual abuse of Doe occurred while she attended Walden West; and, the district teachers attending Walden West did not have any ongoing supervisory duties of students unless contacted by Walden West staff.

Even accepting those facts as true or undisputed, they do not establish as a matter of law that Doe's negligence claim against the district was deemed waived pursuant to section 35330, subdivision (d). The facts do not address, for instance, the nature of Doe's allegations—in particular the nature of the school district's alleged negligence—or whether the Legislature intended that this particular type of claim be deemed waived. Accordingly, the school district has failed to carry its burden of showing that section 35330, subdivision (d), bars Doe's claim.

### C. Gross negligence

Following oral argument, this court requested supplemental briefing on specific issues, including: "The Mount Pleasant Elementary School District in its motion for summary judgment did not attempt to demonstrate that Jane Doe cannot establish either gross negligence (which she maintains would be exempt from Education Code section 35330's 'deemed' waiver of all claims) (*id.*, subd. (d)), or that she '[was] or should [have been] under the immediate and direct supervision of an employee of [the] district' (§ 44808). But Jane Doe elected to oppose the motion not only by disputing the district's interpretation of section 35330 but also by presenting evidence on the merits of her claim of gross negligence. [¶] Does Doe's evidence in opposition to the motion permit the court to conclude that there is no triable issue of material fact? (See, e.g., *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750–751 [reasoning that the trial court must consider all the evidence in assessing whether the initial burden shifted]; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group June 2024 Update) ¶ 10:251; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The

12

Rutter Group June 2024 Update) ¶ 10:271.1 [citing *Villa* for the proposition that 'gaps in the moving party's affidavits may be cured by matters in the opposing party's papers'].)"

In light of the parties' supplemental briefing on this issue, and the school district's arguments on appeal, I would also address this issue and conclude that the district did not carry its burden of demonstrating there is no evidence of gross negligence.

On appeal, the district recites various facts, albeit without any citations to the record, which purportedly show that SCCOE, rather than the school district itself, controlled and operated Walden West, and had the responsibility for vetting, hiring, training and supervising its personnel. The school district also argues that its teachers nevertheless "were present in a support role," "signed up for daytime duties, had the option of participating in the daytime nature hikes, and remained on camp premises for the duration of the camp so that they could be available for the students if called upon." According to the district, these facts "do not support any claim of gross negligence."

Again, though, the district bore the initial burden in its summary judgment motion of demonstrating there is no triable issue of material fact as to Doe's negligence claim. Its unsupported factual assertions on appeal cannot satisfy that burden.

Nor is there any merit to the school district's contention that Doe may not argue gross negligence on appeal because she failed to raise it in the trial court. As we have stated, to support a theory of gross negligence, a plaintiff must allege facts showing either a "want of even scant care," or "an extreme departure from the ordinary standard of conduct." (*Anderson v. Fitness International, LLC* (2016) 4 Cal.App.5th 867, 881 (*Anderson*), quoting *Santa Barbara, supra*, 41 Cal.4th at p. 754.) Gross negligence thus differs from ordinary negligence only in degree, not in kind. (*Anderson, supra,* at p. 881, citing *Gore v. Board of Medical Quality Assurance* (1980) 110 Cal.App.3d 184, 197.) It is a "subspecies of negligence; it is not a separate tort. As the Supreme Court held, its conclusion that an agreement purporting to release a claim for future gross negligence was expressly not a recognition of 'a cause of action for gross negligence.' " (*Joshi,*

13

*supra*, 80 Cal.App.5th at p. 825, quoting *Santa Barbara, supra*, 41 Cal.4th at pp. 779–780, fn. omitted.)  Accordingly, Doe was not required to label her cause of action as one for "gross negligence."

Moreover, as a practical matter, the complaint alleged numerous facts which, if established at trial, could support a finding by the trier of fact that the school district was grossly negligent.  Doe alleged, for instance, that the school district had a duty "to take reasonable steps and implement reasonable safeguards to avoid acts of unlawful sexual conduct by [Covarrubias-Padilla], including preventing abuse of [Doe] by [Covarrubias-Padilla], avoiding placement of [Covarrubias-Padilla] in a function or environment in which contact with children is an inherent part of that function or environment."  Similarly, she alleged that the school district failed "to put in place a system or procedure to supervise or monitor employees, volunteers, representatives or agents to insure that they did not molest or abuse minors in Defendants' care, including [Doe]."

Further, Doe asserted that, "at all material times hereto, [Doe] was under [the school district's] supervisory personnel's care, control and supervision."  She also alleged that before she was sexually assaulted by Covarrubias-Padilla, the school district knew or should have known that Covarrubias-Padilla "had engaged in unlawful sexually-related conduct with minors in the past, and/or was continuing to engage in such conduct," as he was "under investigation for possession and distribution of child pornography at least six months prior to being arrested."  According to Doe, the district "had a duty to disclose to these facts to [Doe], their parents and others, but suppressed, concealed or failed to disclose this information."

In addition, Doe alleged that the school district "failed to take reasonable steps and implement reasonable safeguards to avoid acts of unlawful sexual conduct by [Covarrubias-Padilla], including preventing abuse of [Doe] by [Covarrubias-Padilla], avoiding placement of [Covarrubias-Padilla] in a function or environment in which contact with children is an inherent part of that function or environment."  Instead, Doe

14

alleged, the school district "ignored and concealed the sexual abuse of [Doe] and others by [Covarrubias-Padilla] that had already occurred," and "failed to properly supervise [Covarrubias-Padilla] at Walden West, which led to many students, including [Doe], being repeatedly sexually abused by [Covarrubias-Padilla]."

Finally, prior to and during Covarrubias-Padilla's sexual harassment, molestation and abuse, Doe alleged, the school district knew or should have known that Covarrubias-Padilla had violated his role as a night monitor. Instead, the district allowed Covarrubias-Padilla "to come into contact with minors, including [Doe], without any supervision." The district therefore failed to "put in place a system or procedure to supervise or monitor employees, volunteers, representatives or agents to insure that they did not molest or abuse minors in Defendants' care, including [Doe]."

Doe also produced facts in her separate statement in opposition to the motion for summary judgment which, at the very least, created a triable issue of material fact on this issue, even if the school district had carried its initial burden. Significantly, Doe included facts showing that the Walden West Director had stated that teachers were responsible for their students "all the time" and were "always there as the students' teachers," even during nighttime hours. Similarly, a district administrator had assured Doe's mother that district employees would be supervising the students at night, and that their children would be properly supervised by qualified district staff at all times while at Walden West. The school district did not dispute those facts.

Whether a lack of due care constitutes gross negligence in any particular circumstance is generally a question of fact. (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 358.) It was therefore the school district's burden in the context of its motion for summary judgment to establish that there was no triable issue of material fact on this issue, but it failed to carry that burden here.

15

### D. *"Field trip or excursion"*

Although I would not decide the question of whether Walden West constituted a field trip or excursion within the meaning of section 35330, subdivision (d), I also write separately on this issue because I decline to join a portion of the majority's analysis on it.

The majority cites the definition of "field trip or excursion" first articulated in *Castro* and cited in subsequent cases: " 'Field trip' is defined as a visit made by students and usually a teacher for purposes of first hand observation (as to a factory, farm, clinic, museum). 'Excursion' means a journey chiefly for recreation, a usual brief pleasure trip, departure from a direct or proper course, or deviation from a definite path." (*Castro, supra*, 54 Cal.App.3d at p. 236.) (Maj. opn., *ante*, at p. 9.) Similarly, the majority, relying on *Castro*, states that, "[i]n holding that the plaintiff had adequately alleged that the high school's ROTC summer camp was not a field trip, the *Castro* court reasoned that the plaintiffs in *Castro* were entitled ' "to prove, if they can, that the ROTC 'summer camp, bivouac and summer training ' " ' at which their son died 'was just as much a part of the school curriculum as a school-sponsored band or orchestra performance at an off-premises event.' " (Maj. opn., *ante*, at p. 9, citing *Castro, supra*, at p. 237.) Therefore, the majority concludes, the "hallmark of a field trip or excursion under section 35330 is that its observational or recreational purpose represents a departure from the school's curriculum and required school purposes." (Maj. opn., *ante*, at p. 9.)

In my view, *Castro* made only passing reference to curriculum at the end of the opinion in dicta (*Castro, supra,* 54 Cal.App.3d at p. 237.) and did not purport to define "field trip or excursion" based on whether it functioned as curriculum replacement. Instead, the court stated: "As we construe the governing sections, we conclude that where a 'school-sponsored activity,' i.e., one that requires attendance and for which attendance credit may be given, is involved, the event is a 'specific undertaking' of the district. In such a case 'the district ... shall be liable or responsible for the ... safety of any pupil only while such pupil is or should be under the immediate and direct supervision of

16

an employee of such district.' " (*Castro, supra*, 54 Cal.App.3d at p. 236.) In other words, the court's holding was predicated on the voluntary or involuntary nature of the activity, rather than whether it was part of the school curriculum.[16] I would decline to follow such a definition for "field trip" or "excursion" because there is no authority or explanation for it provided in *Castro*, and no support for it in the statute itself.

The majority also states, "in nearly a half century since *Castro* announced its rule, the Legislature has taken no action to override it. Though not dispositive of the legislative intent in 1965, this apparent legislative acquiescence affords us no reason to question *Castro*'s 'required school purposes' standard here." (Maj. opn., *ante*, at pp. 10-11.) However, I do not think the Legislature's failure to act in response to *Castro* or its progeny can be read as acquiescence, let alone approval, of its holdings. As the California Supreme Court has recently stated, "Legislative acquiescence arguments of this type rarely do much to persuade; even when a clear consensus has emerged in the appellate case law, we have noted that legislative inaction supplies only a ' " ' " 'weak reed upon which to lean' " … ' " ' in inferring legislative intent." (*Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93, 116–117.)

Finally, I share the majority's acknowledgment regarding the potential impact which may result from any perceived opening to what has been known as field trip "immunity." (Maj. opn., *ante*, at p. 21.) However, I also acknowledge that interpreting section 35330, subdivision (d), to afford absolute immunity to school districts—absent express legislative articulation—would create an inherent contradiction to public policy by removing "an obligation to adhere to even a minimal standard of care" as relates to

---

[16] I would also decline to follow this aspect of *Castro*. As this court previously noted in *Barnhart*, "*Castro's* statements about the voluntary or involuntary nature of the participation are (1) dicta, and (2) of questionable validity given that neither [statute] suggests such a test." (*Barnhart, supra,* 76 Cal.App.4th at p. 827; see also *Casterson, supra,* 101 Cal.App.4th at pp. 177, 185, fn. 4.) Indeed, section 35330 and section 44808 say nothing about the voluntary or involuntary nature of the specific activities.

public school children during field trips or excursions. (*City of Santa Barbara, supra*, 41 Cal.4th at 777.) I disagree with the *Castro* court that the Legislature would have intended that children, some as young as grade school age, to be "effectively on their own" during such field trips or excursions. (*Castro, supra*, 54 Cal.App.3d at p. 236.) For the aforementioned reasons, I conclude that any determination that absolute immunity exists under section 35330, subdivision (d), should expressly come from the Legislature.

Trial Court:        Santa Clara County Superior Court
                    Superior Court No.:  20CV374714

Trial Judge:        Hon. Christopher G. Rudy and Evette D. Pennypacker

Counsel:            Manly, Stewart & Finaldi, Morgan A. Stewart, Vince W. Finaldi,
                    Courtney P. Pendry, Haley K. Aanestad; Esner, Chang, Boyer &
                    Murphy, Holly N. Boyer and Kevin K. Nguyen for Plaintiff and
                    Appellant.

                    Spinelli, Donald, and Nott, Ross R. Nott and Carter J. Nott for
                    Defendant and Respondent.

*Doe v. Mount Pleasant Elementary School District*
H050830